IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ARMANDO PARRAZ, JR.,

    Plaintiff,

v.                                                                                                          2:19-cv-00904-LF

ANDREW M. SAUL, Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Armando Parraz Jr.'s Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 23), which was fully briefed on July 22, 2020. *See* Docs. 27, 28, 29. The parties consented to my entering final judgment in this case. Docs. 4, 8, 9. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") violated the mandate rule in her consideration of the psychological evaluation and assessment provided by Esther Davis, PhD. I therefore grant Mr. Parraz's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

**I.**    **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.  Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.    Background and Procedural History

Mr. Parraz was born in 1972, completed one year of college, and worked as a jewelry vendor, warehouse door adjuster, call center customer and sales associate, store cashier, and grocery vendor. AR 52–59, 76–77, 271.[3] In 2014, Mr. Parraz filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging disability

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Documents 13-1 to 13-14 are the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

since July 24, 2012, due to post-traumatic stress disorder ("PTSD"), major depressive disorder, and generalized anxiety. AR 84–86, 232–39. The Social Security Administration ("SSA") denied his claims initially on February 10, 2015. AR 142–48. The SSA denied his claims on reconsideration on July 1, 2015. AR 151–56. Mr. Parraz requested a hearing before an ALJ. AR 157–58. On August 10, 2016, ALJ Lillian Richter held a hearing. AR 41–83. ALJ Richter issued an unfavorable decision on September 29, 2016. AR 14–34. Mr. Parraz requested review by the Appeals Council, which denied his request. AR 1–4, 12–13. Mr. Parraz then filed his first appeal to this Court on January 31, 2017. *See Parraz v. Social Security Administration*, No. 2:17-cv-00143 KK, Doc. 1 (D.N.M. Jan. 31, 2017). On February 2, 2017, while his first appeal was pending, Mr. Parraz filed a subsequent application for SSI. AR 751, 878. On May 24, 2018, United States Magistrate Judge Kirtan Khalsa remanded Mr. Parraz's case on the grounds that ALJ Richter failed to properly evaluate Licensed Professional Clinical Counselor ("LPCC") Jennifer Webb's assessment of Mr. Parraz's ability to do work related mental activities and failed to properly evaluate the psychological evaluation and assessment provided by Esther Davis, PhD. *Parraz*, No. 2:17-cv-00143 KK, Doc. 24 at 7–21.

On remand, the Appeals Council remanded the case to an ALJ for a new hearing. AR 876–78. The remanded case also was assigned to ALJ Richter, and on May 15, 2019, she held a hearing at which Mr. Parraz and vocational expert Phunda Yarbrough testified. AR 781–817. Pursuant to the remand order of the Appeals Council, ALJ Richter consolidated Mr. Parraz's subsequent application for SSI with his remanded case for DIB and SSI. AR 751, 878.

On July 31, 2019, ALJ Richter issued an unfavorable decision. AR 748–71. In her decision, ALJ Richter found that Mr. Parraz met the insured requirements of the Social Security Act through December 31, 2014. AR 754. At step one, she found that Mr. Parraz had not

4

engaged in substantial, gainful activity since July 24, 2012, the alleged onset date. *Id*. At step two, ALJ Richter found that Mr. Parraz had the following severe impairments:

> mental impairments variously diagnosed to include major depressive order, recurrent, severe without psychotic features; borderline personality traits; post-traumatic stress disorder; mood disorder, not otherwise specified; personality disorder with avoidant, dependent, and histrionic traits; generalized anxiety disorder; dysthymia; panic disorder with agoraphobia; sleep disorder; and attention deficit hyperactivity disorder combined type; and physical impairments of mild degenerative disc disease; myofascial pain syndrome; obesity; and trigger fingers of the bilateral hands.

*Id*. She also found that Mr. Parraz's impairments of gastroesophageal reflux disorder and cholelithiasis were non-severe. *Id*.

At step three, ALJ Richter determined that none of Mr. Parraz's impairments, alone or in combination, met or medically equaled a Listing. AR 754–56. Because she found that none of the impairments met a Listing, ALJ Richter assessed Mr. Parraz's RFC. AR 756–69. She found Mr. Parraz had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can frequently stoop; can never climb ladders, ropes or scaffolds; and can frequently handle and finger bilaterally. [He] can perform simple routine and repetitive work, can have occasional interaction with supervisors and coworkers and no interaction with members of the public, can make simple work related decisions in a workplace with few changes in the routine work setting. [He] can hear, understand and communicate simple information. [He] cannot perform assembly line production work and cannot perform work in tandem with other employees.

AR 756–57. At step four, ALJ Richter found that Mr. Parraz was unable to perform any past relevant work. AR 769. At step five, the ALJ found that Mr. Parraz was not disabled because he could perform jobs that exist in significant numbers in the national economy, such as housekeeping cleaner, merchandise maker, and router. AR 769–70.

Because this Court previously remanded Mr. Parraz's case, Mr. Parraz was not required to seek Appeals Council review again, and the ALJ's decision stands as the final decision of the

Commissioner.  *See* 20 C.F.R. § 404.984(a).  Mr. Parraz timely filed his second appeal to this Court on September 27, 2019.[4]  Doc. 1.

### IV. Mr. Parraz's Claims

Mr. Parraz raises three arguments for reversing and remanding this case:  (1) the ALJ violated the mandate rule by failing to comply with Judge Khalsa's instructions on remand as to Dr. Davis's psychological evaluation and assessment; (2) the ALJ erred by improperly rejecting the opinions of Mr. Parraz's treatment provider, LPCC Webb, in violation of SSR 06-03p; and (3) the ALJ erred by improperly rejecting the opinion of consultative examiner Steven Baum, PhD.  Doc. 23 at 1–2.  Because I find that the ALJ violated the mandate rule, I will remand this case.  I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### V. Analysis

#### A. **The ALJ failed to comply with the mandate rule in her consideration of Dr. Davis's psychological evaluation and assessment.**

Mr. Parraz challenges ALJ Richter's evaluation of Dr. Davis's opinion on the basis that it violates the mandate rule.  Doc. 23 at 12–16.  The mandate rule is a corollary of the law-of-the-case doctrine and requires a court to "comply strictly with the mandate rendered by the reviewing court."  *Huffman v. Saul Holdings Ltd. Partnership*, 262 F.3d 1128, 1132 (10th Cir. 2001).  Although the mandate rule typically concerns higher and lower courts, it also may apply to courts and administrative agencies.  *Padilla-Caldera v. Holder*, 637 F.3d 1140, 1145 (10th Cir. 2011), as corrected (Mar. 22, 2011).  The rule "requires the administrative agency, on

---

[4] If the claimant does not file exceptions and the Appeals Council does not assume jurisdiction of the case, the ALJ's decision becomes final 61 days after it is issued. 20 C.F.R. § 404.984(b)−(d). The claimant then has 60 days to file an appeal to this Court.  20 C.F.R. § 404.981.

6

remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." *Grigsby v. Barnhart*, 294 F.3d 1215, 1218 (10th Cir. 2002) (quoting *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) and citing *Brachtel v. Apfel*, 132 F.3d 417, 419–20 (8th Cir. 1997)).  "Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989).

Mr. Parraz specifically contends that ALJ Richter, in her consideration of Dr. Davis's opinion, "copy and pasted" nearly all of the language from her prior decision in violation of the mandate rule.  Doc. 23 at 13.  The Court agrees with Mr. Parraz as it is readily apparent that nearly all of ALJ Richter's discussion of Dr. Davis's opinion was borrowed wholesale from her prior decision.  *Compare* AR 30 *with* AR 766.

On March 24, 2016, Dr. Davis performed a psychological evaluation of Mr. Parraz based on a referral from Mr. Parraz's attorney.  AR 702–08; *see also Parraz*, No. 2:17-cv-00143 KK, Doc. 24 at 14–16 (summarizing Dr. Davis's evaluation).  Dr. Davis assessed Mr. Parraz's ability to do work related mental activities, specifically finding that Mr. Parraz had several marked and moderate limitations.[5]  AR 709–10; *see also Parraz*, No. 2:17-cv-00143 KK, Doc. 24 at 16–17.

---

[5] Dr. Davis assessed that Mr. Parraz had marked limitations in his ability to:  (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods of time (*i.e.,* 2-hour segments); (3) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; (4) work in coordination with/or proximity to others without being distracted by them; (5) complete a normal workday and work week without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods; (6) interact appropriately with the general public; (7) accept instructions and respond appropriately to criticism from supervisors; (8) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (9) travel in unfamiliar places or use public transportation.  *See* AR 709–10.
   Dr. Davis assessed that Mr. Parraz had moderate limitations in his ability to:
(1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; (3) to carry out very short and simple instructions; (4) sustain an ordinary

In addition, Dr. Davis determined that the severity of Mr. Parraz's anxiety and depression met the criteria of Listings 12.04 Affective Disorders and 12.06 Anxiety-Related Disorders. AR 711–12.

In her 2016 decision, ALJ Richter accorded little weight to Dr. Davis's GAF score and "some weight" to her opinion. AR 30. She explained:

> I note that this evaluation appears to be based primarily on [Mr. Parraz's] subjective reports. I give little weight to both the GAF scores of Dr. Davis and Dr. Adams as GAF scores are subjective assessments and describe [Mr. Parraz's] condition at one instance in time. Also, both GAF scores are around ten points away from the more midrange GAF scores regularly assigned by [Mr. Parraz's] examining and treating sources. I give some weight to Dr. Davis' opinion but note that some of her restrictions appear to be based on erroneous information. For example, [Mr. Parraz] told Ms. Adamas that he traveled with his mother to Albuquerque, was always accompanied by his mother, and that he was more comfortable with her driving (14F/2,5). However, he testified that he was able to drive himself to afternoon appointments and that he sometimes flew from Carlsbad to Albuquerque without his mother. It is also inconsistent with medical evidence of record indicating that [Mr. Parraz] responded favorably to medication and treatment (Exhibit 9F/21), that he reported an ability to get around and function (Exhibit 12F/20) that he lived with his sister and helped care for his niece (Exhibit 9F/2), and that he travels alone to visit his mother. (Exhibit 9F/2).

AR 30.

In his appeal from ALJ Richter's 2016 decision, Mr. Parraz argued that "the ALJ improperly rejected Dr. Davis's evaluation and assessment because she made speculative inferences from medical reports and provided only vague references to medical evidence inconsistencies." *Parraz*, No. 2:17-cv-00143 KK, Doc. 24 at 18. Judge Khalsa agreed with

---

routine without special supervision; (5) ask simple questions or request assistance; (6) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (7) respond appropriately to changes in the work place; and (8) set realistic goals or make plans independently of others. *Id*.

Finally, Dr. Davis assessed that Mr. Parraz had slight limitations in his ability to: (1) make simple work-related decisions; and (2) to be aware of normal hazards and take adequate precautions. *Id*.

Mr. Parraz, finding that "ALJ Richter's explanations for discounting Dr. Davis's evaluation and assessment [we]re not supported by substantial evidence." *Id*. at 19. Judge Khalsa explained:

> The ALJ begins her explanation by stating that Dr. Davis's evaluation was not supported because it was based primarily on the claimant's subjective reports, some of which the ALJ found incredible. (Tr. 30.) This explanation, however, ignores that Dr. Davis reviewed Mr. Parraz's medical records from 2012 forward, and administered standardized psychological tests, as part of her evaluation and assessment. The ALJ provided no explanation at all for rejecting the objective results obtained from properly administered standardized psychological testing measures; *i.e.,* Burns Depression Inventory demonstrated *severe depression*; Generalized Anxiety Disorder 7-Item Scale demonstrated *severe anxiety*; and Montreal Cognitive Assessment demonstrated *mild cognitive impairment*, and the resulting assessed functional impairments. (Tr. 706.) This is error. *See Beard v. Colvin*, 642 F. App'x 850, 852 (10th Cir. 2016) (unpublished) (an ALJ can discount findings to the extent they relied on subjective complaints found to be incredible, but must give reasons for rejecting objective assessment); *see also Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005) (finding the ALJ was free to reject a treating psychologist's opinion where it appeared to be based on subjective complaints and isolated instances "rather than objective findings").
>
> The ALJ also stated broadly that Dr. Davis's assessment was based on "erroneous" information because there was medical evidence that indicated Mr. Parraz responded favorably to medication and treatment, and record evidence that indicated Mr. Parraz occasionally traveled alone, sporadically cared for his young niece, and reported an ability to get around and function. (Tr. 30.) However, Dr. Davis considered, *inter alia*, Mr. Parraz's compliance with his medication regimen and treatment (Tr. 707), and his activities of daily living (Tr. 705), when she made her diagnoses and assessment. Moreover, the medical records indicate that despite Mr. Parraz's favorable response to medication and treatment, his treatment providers' diagnoses and assigned GAF scores remained consistent over the course of his ongoing treatment. As such, it is mere speculation that Mr. Parraz's favorable response to medication and treatment rendered him less restricted in his ability to do work related mental activities than Dr. Davis assessed. *Robinson*, 366 F.3d at 1083; *McGoffin,* 288 F.3d at 1252. Further, the Tenth Circuit has held that an ALJ's reliance on sporadic and intermittent performance of daily activities to establish that a claimant is capable of engaging in substantial gainful activity is insufficient when a claimant's medical complaints are supported by substantial evidence. *See generally Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987) (finding that the ability to do minor house chores and drive for brief intervals does not undercut allegations of disabling pain); *see also Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983) (finding that sporadic performance of a few household tasks, working on cars, and driving on occasional recreational trips did not establish that a person was capable of engaging in substantial gainful activity). Here, the medical evidence supports Mr. Parraz's

> history of mental impairments, and the ALJ has failed to demonstrate how
> Mr. Parraz's engaging in sporadic and limited daily activities undercuts Dr.
> Davis's evaluation and assessment of Mr. Parraz's ability to engage in substantial
> gainful activity and to do work related mental activities. *Frey*, 816 F.2d at 517.
> Finally, Dr. Davis's evaluation and assessment is consistent with other medical
> evidence in the record.

*Id.* at 19–21 (footnotes omitted). Following Judge Khalsa's order remanding the case to the SSA, ALJ Richter had a second opportunity to weigh Dr. Davis's psychological evaluation and assessment. ALJ Richter's 2019 evaluation follows below, with alterations from her prior 2016 decision appearing in bold or stricken:

> ~~I note that this evaluation appears to be based primarily on [Mr. Parraz's] subjective reports.~~ I give little weight to both the GAF scores of Dr. Davis and Dr. Adams as GAF scores are subjective assessments and describe [Mr. Parraz's] condition at one instance in time. Also, both GAF scores are around ten points away from the more midrange GAF scores regularly assigned by [Mr. Parraz's] examining and treating sources. I give some weight to Dr. Davis' opinion but note that some of her restrictions appear to be based on erroneous information. For example, [Mr. Parraz] told **Dr.** ~~Ms.~~ Adams that he traveled with his mother to Albuquerque, was always accompanied by his mother, and that he was more comfortable with her driving (14F/2,5). However, he testified **in August 2016** that he was able to drive himself to afternoon appointments and that he sometimes flew from Carlsbad to Albuquerque without his mother. It is also inconsistent with medical evidence of record indicating that [Mr. Parraz] responded favorably to medication and treatment (~~Exhibit~~ 9F/21), that he reported an ability to get around and function (~~Exhibit~~ 12F/20) that he lived with his sister and helped care for his niece (~~Exhibit~~ 9F/2), and that he travels alone to visit his mother.~~ (Exhibit~~ **(**9F/2). **In August 2017, he was "active refurbishing a home" (Exhibit 21F/18). In November 2018, [Mr. Parraz] traveled with family to Disneyland in Los Angeles. Dr. Davis's opinion is also inconsistent with Ms. Webb's therapy notes, which reliably showed normal presentation on mental status examination.**

AR 766.

In once again concluding that Dr. Davis's opinion was only entitled to some weight, ALJ Richter simply reiterated verbatim the precise reasons that the Court previously found were not supported by substantial evidence. These reasons are no more compelling now than they were before, and as such, they provide no support for the ALJ's decision to afford only some weight to

Dr. Davis's opinion. Thus, to the extent that ALJ Richter's reasons for discounting Dr. Davis's opinion were adopted wholesale from her prior decision, the Court finds that she has violated the mandate rule.[6]

Although the Commissioner acknowledges that the ALJ merely reiterated the same reasons that the Court previously rejected, he nonetheless contends that the mandate rule argument is misplaced because the ALJ pointed to additional evidence that she found inconsistent with Dr. Davis's opinion. *See* Doc. 27 at 17–19. This additional evidence, however, also fails to pass scrutiny for the very reasons given in the Court's prior ruling.

First, ALJ Richter cited additional evidence of Mr. Parraz's activities, namely that he actively refurbished a home in August 2017 and that he traveled with family to Disneyland in November 2018. *See* AR 766. But as Judge Khalsa explained, "an ALJ's reliance on sporadic and intermittent performance of daily activities to establish that a claimant is capable of engaging in substantial gainful activity is insufficient when a claimant's medical complaints are supported by substantial evidence." *Parraz*, No. 2:17-cv-00143 KK, Doc. 24 at 21 (citing to *Frey v. Bowen*, 816 F.2d 508, 516–17 (10th Cir. 1987) (finding that the ability to do minor house chores and drive for brief intervals does not undercut allegations of disabling pain) and *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983) (finding that sporadic performance of a few household tasks, working on cars, and driving on occasional recreational trips did not establish that a person was capable of engaging in substantial gainful activity)). Because there was

---

[6] Notably, the Commissioner does not argue that this case presents any of the exceptional circumstances in which deviation from the mandate rule is permissible. *See Grigsby*, 294 F.3d at 1219 n.4 (explaining that deviation from the mandate rule is permitted only in "exceptional circumstances, including (1) a dramatic change in controlling legal authority; (2) significant new evidence that was not earlier obtainable through due diligence but has since come to light; or (3) if blatant error from the prior . . . decision would result in serious injustice if uncorrected") (internal citation and quotation marks omitted).

medical evidence to support Mr. Parraz's history of mental impairments, Judge Khalsa found that the ALJ was required "to demonstrate how Mr. Parraz's engaging in sporadic and limited daily activities undercut[] Dr. Davis's evaluation and assessment of Mr. Parraz's ability to engage in substantial gainful activity and to do work related mental activities." *Parraz*, No. 2:17-cv-00143 KK, Doc. 24 at 21.  ALJ Richter's failure to do so in her first decision was one of the reasons the case was remanded.  *Id*.  ALJ Richter committed the same error a second time by citing to additional sporadic activities without offering any explanation as to how these activities undercut the specific work-related mental limitations Dr. Davis assessed.

Second, ALJ Richter added that Dr. Davis's opinion was only entitled to some weight because it was "inconsistent with Ms. Webb's therapy notes, which reliably showed normal presentation on mental status examination."  AR 766.  In her 2016 decision, ALJ Richter cited to other medical evidence from LPCC Webb's treatment notes that, like the normal mental status examination findings, indicated that Mr. Parraz responded favorably to medication and treatment and was stable at times.  *Parraz*, No. 2:17-cv-00143 KK, Doc. 24 at 13.  But as Judge Khalsa pointed out, despite these medical records showing a favorable response to medication and treatment, LPCC Webb's "diagnoses and assigned GAF scores remained consistent over the course of [Mr. Parraz's] ongoing treatment," and LPCC Webb regularly determined that Mr. Parraz "needed to remain in treatment because he had not yet met his discharge goal."  *Id*.; *see also id*. at 20.  In other words, ALJ Richter picked through the evidence, citing those aspects of LPCC Webb's treatment notes that supported a finding of non-disability while ignoring the evidence in those notes that detracted from such a finding.  Judge Khalsa previously concluded that doing so was error and further, that it was "mere speculation that Mr. Parraz's favorable response to medication and treatment rendered him less restricted in his ability to do work

12

related mental activities than Dr. Davis assessed." *Id*. at 20–21; *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004) ("The ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability."). This conclusion applies equally to ALJ Richter's reliance now on LPCC Webb's therapy notes showing normal mental status examination findings. It is mere speculation that the normal mental status examination findings in these notes rendered Mr. Parraz more able to do work-related mental activities than Dr. Davis assessed. In short, ALJ Richter offered no explanation whatsoever connecting the evidence she cited from LPCC Webb's therapy notes— be it Mr. Parraz's favorable response to treatment and medication or the normal mental status examination findings—to her conclusion that Dr. Davis's opinion should be relegated to "some weight" for lack of support and inconsistency. It is not enough for the ALJ to baldly conclude that certain cherrypicked and decontextualized portions of LPCC Webb's therapy notes justified her accordance of "some weight" to Dr. Davis's opinion.

Lastly, the Commissioner argues that reversal is not necessary because the ALJ's RFC finding was "consistent with several restrictions found" in Dr. Davis's opinion. *See* Doc. 27 at 8–9. The Commissioner's assertion, however, overlooks the fact that the ALJ failed to specify which aspects of Dr. Davis's opinion she was rejecting and which aspects she was giving some weight to and incorporating into the RFC. *See* AR 766 (indicating that some of Dr. Davis's assessed restrictions were based on erroneous information, but then failing to actually identify those restrictions). Because the ALJ did not address any of the specific limitations Dr. Davis assessed, the Commissioner's argument regarding the RFC is an improper post-hoc rationalization. *See Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent

13

from the ALJ's decision itself."); *see also Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (holding that an ALJ's reasons for rejecting an opinion must be "sufficiently specific" to allow for meaningful judicial review).

In sum, the ALJ has done little more than restate her prior evaluation of Dr. Davis's opinion. Her reasons for assigning some weight to the opinion are no more probative or persuasive now than they were before, and their reiteration following remand evidences a total disregard for the mandate rule. *See Grigsby*, 294 F.3d at 1218 (the mandate rule "requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart"). Accordingly, the Court will remand this case so that the ALJ can properly assess Dr. Davis's opinion. The Court does not reach Mr. Parraz's remaining arguments as they "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

### B. The Court recommends that the Commissioner assign this case to a different ALJ on remand.

Finally, the Court must consider Mr. Parraz's request that the Court remand this matter for rehearing before a different ALJ. Doc. 23 at 16. In an unpublished decision, the Tenth Circuit stated that it would direct assignment of a social security case to a different ALJ on remand "only in the most unusual and exceptional circumstances." *Miranda v. Barnhart*, 205 F. App'x 638, 644 (10th Cir. 2005) (quotation marks omitted). Moreover, the Seventh Circuit has stated that courts "have no general power . . . to order that a case decided by an administrative agency be sent back . . . to a different [ALJ]," in the absence of sufficient evidence of bias to require review by a different ALJ as a matter of due process. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996). Nevertheless, a number of courts have either directed or recommended reassignment of social security cases on remand for various reasons other than bias, including

that the ALJ "mischaracterized the record," "failed to consider the record with adequate care," or "failed to adequately consider the medical evidence." *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004) (collecting cases); *see also Guthrie v. Barnhart*, No. CV 03-1399 KBM, 2004 WL 7337620, at *5 (D.N.M. Aug. 12, 2004) (recommending "that the Commissioner consider assigning this matter to a different ALJ upon remand to take a fresh look at the matter").

Here, Mr. Parraz has not alleged, and the Court does not find, sufficient evidence of bias to require review by a different ALJ as a matter of due process. However, the Court does find that the ALJ's 2019 decision failed to consider the medical evidence with adequate care, notwithstanding this Court's prior reversal of her 2016 decision for similar reasons. Consequently, and in light of the many years during which Mr. Parraz's social security claims have been pending, the Court concludes that, "rather than have the same ALJ review the claims a third time, a fresh look by another ALJ would be beneficial." *Sutherland*, 322 F. Supp. 2d at 292. Thus, the Court recommends that the Commissioner assign this case to a different ALJ on remand.

## VI. Conclusion

IT IS THEREFORE ORDERED that Mr. Parraz's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 23) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent